Please be seated. Your Honor, the final case on the docket is 2-18-09-0196. The defendant is a 21-year-old plaintiff, Appellee v. Franklin v. Martin, 10-12. Arguing on the death of the defendant's friend is Elizabeth A. Boddy. Arguing on the death of the plaintiff, Appellee v. Stephen A. Boddy. Ms. Boddy. Good afternoon. My name is Elizabeth Boddy, and I represent Frank Martin. Frank filed a pro se post-conviction petition arguing that his trial attorney was ineffective for not calling his son Trenton in his defense. The trial court summarily dismissed the petition. It reasoned that the petition did not set forth sufficient facts to establish a reasonable probability that the outcome of the trial would not have been different had Trenton testified. Of course, at the first stage of post-conviction proceedings, Frank was not required to prove Strickland's prejudice prong. Rather, he was required to show only that it was arguable that counsel's failure to call Trenton was prejudicial. Can we use the initials TM? Yes. Okay. Pursuant to Supreme Court rule. Right. Sorry. Okay. So according to the petition, TM would have testified, among other things, that he and the defendant neither slept nor hiked together naked, correct? Correct. So for what was the proper purpose for introducing that evidence? What would have been the proper purpose? For a couple reasons. AM and ZM both testified that they came forward in this case to protect TM after TM said that he went hiking naked with his father. And so TM's testimony, he would have testified that he never went hiking with his father and that his father was never naked around him. So TM's testimony would have cast doubt on the reliability of AM's and ZM's testimony that they came forward after overhearing Trenton, or sorry, TM, say that he went naked hiking with his father. Or it would have insinuated that ZM was not a believable witness, or it might have actually ostensibly been used to bolster the defendant's credibility, which would not be proper purpose, would it? I mean, can evidence be used to do that? You can't use evidence of good acts to bolster. Right. But it wasn't this is not why he wanted to introduce it. He wanted to introduce it to call into question AM and ZM's motive for coming forward, and his testimony also would have called into question the reliability or veracity of their claims and raised the possibility that they came forward or that they fabricated their testimony during a time of family turmoil. According to the petition, which we have to take as true at this stage, because it's not rebutted by the record and is actually supported by the record, TM would have testified that in 2013, when his older siblings came forward, there was tension in the family about where TM was going to live. At the time, and he still does, live with his mother, Hope. But in 2013, TM did not want to live with Hope because she had problems with alcohol and a live-in boyfriend, and he wanted to live with his father. We're familiar with the facts. Okay. Let me ask a question. Ordinarily in first-stage review, because of ineffective assistance of counsel, oftentimes the claims are not in the record of the law, correct? Correct. So we have to determine whether or not this is just a constitutional claim, ineffective assistance of both trial counsel and appellate counsel, correct? Correct. And the same for both, right? Correct. Here, there was a post-trial claim of ineffective assistance of counsel by Mr. Martin, correct? Correct. And he was asked specifically by the court, do you have any other claims, do you have any other witnesses other than showing character? And he said no. Why isn't that in your brief? Well, he did in his pro se motion, he did mention defense counsel's failure to call Trenton. I'm talking about during, while he was still represented. Right. He did. He filed his own pro se post-trial motion. Right. And he had a crankle here. Right. And he mentioned counsel's failure to call Trenton. And let me ask you this. Trenton, if you call Trenton. Or TM, I'm sorry. TM. Yeah. My mistake. There were post-trial claims of ineffective assistance of counsel. You don't mention these in your brief, which I think you had a responsibility to put this court on notice that there was that motion. The court asked, were there any other witnesses mentioned that were going to testify other than character? And he said off the record, no, sir. Now, isn't that a forfeiture by the defendant of this issue? No. First of all, we're talking about at that point he was filing his motion pro se. First of all, in his written motion, he did mention counsel's failure to call Trenton. When the trial judge questioned about him, about it, who knows if Frank even knew what a character witness was or what a character witness wasn't. Let me ask you this. Let me ask you this. We know what a character witness is. And the same rules apply to a pro se defendant that apply to an attorney. The jury knew that Trenton denied abuse, correct? Because in his testimony from Officer Damon testified, he interviewed TM, and based upon the interview, no further investigation related to Trent was done. And Ms. Poirier argued that vigorously in closing argument. More importantly, during closing argument, she argued that there were no red flags when Detective Damon interviewed TM. You heard the officer did not prepare any charges or anything further regarding TM. So why is that not a strategy where if you put TM on the stand, you run the risk that he's going to come off what he said to the police because now he's under oath. And there's a possibility that he may say it happened just like AM did. AM originally denied it, but then when she was confronted and she was interviewed by the police, she said it did happen. So isn't that a reasonable trial strategy to benefit from what you have in evidence rather than risking the exposure on cross-examination? At first stage, any question about trial strategy is inappropriate. That's appropriate for later stages. A petition cannot be summarily dismissed based on trial strategy. We don't know why he wasn't called. We know that he was named as a witness. We know that defense counsel knew that he would deny the allegations. We knew that the trial judge thought he was potentially relevant. And we know that he did not call him. We don't know why. And trial strategy, like I said, is a question that is left for second and third stage proceedings, not first stage. And it wasn't just that he would rebut any propensity evidence. Trenton would have told a story to the jury that the jury never heard about the circumstances under which AM and ZM came forward. And that's alleged in the pro se post-conviction petition. It's not just a matter of him rebutting AM and ZM's propensity evidence concerning Trenton, but it's telling this whole other story that they came forward during a time of turmoil, and it would have corroborated Frank's defense that they fabricated their allegations during a time of turmoil. In your brief on page 8, you state that TM's testimony would have refuted the propensity evidence. Right. I'm not connecting the dots. How so? It would have. Well, both AM and ZM testified to propensity evidence about TM, because they said that TM went hiking naked with his father, and upon their return home, Frank did not want TM to put his clothes on. And that was left unrebutted because Trenton or TM did not testify in this case. So his testimony would have refuted their testimony that something inappropriate happened between them. Well, what about the argument counter to that? Isn't that argued – aren't you arguably trying to impeach the believability of the other witnesses? You're trying to say that when he was with this other child, this didn't happen. Aren't you trying to make them out to be less than believable, and is that proper to do that? It is proper to try to undermine their credibility and to cast doubt on the reliability of their claim for why they came forward. Why would that be doubt? I mean, let's put this in the real context. The fact that somebody didn't abuse one of the children but abused two others, how does that mean that he wouldn't have abused the other children? It's not that. It's refuting their testimony that Frank did something improper to TM. TM would have gotten on the stand and said, he was never naked around me. I never went naked hiking with him. It would have refuted that propensity evidence, and it also would have called into question the reliability of their claim that they came forward after hearing TM say that he went hiking naked with his father. If he never went hiking with his father, there was no conversation for AM or ZM to overhear. Therefore, that calls into question the reliability of their claim that they contacted authorities after hearing TM say that. What about the testimony that was kind of blurred testimony from both the mother, wife, HM, and AM that the defendant would be naked and giving his daughter instructions on sex and sex education, but he admits he did all these things. He admits that he was with the victims at the time. He admits that he went to the race with ZM. He admits being around them all of those times, but just goes up to the point of naked, hiking naked, but just denies the sex acts. I mean, even if they were to call TM, if the defense had called TM, where is the reasonable likelihood that the outcome would have been different when you have this abundance of corroboration for their stories, that he puts himself in the basement where these offenses took place. He puts himself on the trip with ZM, but all he says is, but I did everything else that they've alleged except I didn't have sex with them. Where's the reasonable likelihood? Well, he was their father, so he was obviously going to be with them, and he was obviously going to be in his daughter's bedroom. That's not, you know, odd. And he was an admitted nudist, which is not a crime. And he has always professed his innocence. He admitted to being a nudist, but he said he never did anything inappropriate to his children. And Trenton's testimony would have supported his defense because it would have cast doubt on the veracity of his older siblings' motive for coming forward, and it would have exposed the possibility that they came forward during or they fabricated their allegations during a time of family turmoil. But the jury heard that from Detective Damon. They knew that ZM or that TM did not make any accusations against his father. They knew that. And defense counsel argued that. She argued that in closing argument vigorously. The jury never heard the story that is in the petition about the circumstances under which AM and ZM came forward. That story was completely not told. And the jury never heard any evidence to refute the propensity evidence concerning TM as testified to by both AM and ZM. You keep saying propensity evidence. The testimony that TM would have offered was only offered as to the motive, the reason why they came forward. It was not propensity evidence in this case. Well, in testifying to why they came forward, they necessarily brought forth propensity evidence. When they were discussing their father taking their younger brother hiking in the nude and not wanting him to put clothes on, that is bad conduct evidence concerning TM. And his testimony would have refuted that. It was never – I know Officer Damon did testify that TM denied allegations, but TM, by testifying, would have refuted that evidence in a much stronger manner and he would have brought forth, like I said before, the suspicious circumstances under which AM and ZM came forward. Well, defense counsel had an alternative argument for the motive. She argued that ZM lied because you know from Officer Damon that TM didn't make any accusations. You know that. He came forward because his father was looking down his fiancé's. Right. Looking at her breasts or her cleavage. And so she made that argument. Where is the reasonable likelihood that the outcome would have been different just because they didn't call TM to say what they said didn't happen? It's not just that. It's also if he were to testify, he would have testified to this tension, this family turmoil going on when the allegations were made. And it's not unheard of. What was the turmoil? The turmoil was, one, TM did not want to live with his mother. He wanted to live with Frank. That was part of it because she had issues with alcohol. She had a new live-in boyfriend. He wasn't comfortable living there. He wanted to live with his father. The defendant testified, correct? Yes. He had the opportunity to give that testimony. But part of his allegation of ineffective assistance counsel is that counsel never brought this evidence into the case and never told the jury about it. He never had an opportunity to inform the jury about it because he did. He did because he testified, and he denied all the allegations. And, you know, what turmoil did he testify about? He did not testify. He testified. I know it was introduced in the record at trial that he was feuding with his son, ZM, and that he had a strained relationship with AM. That part's in the record. But the whole tension regarding where TM was going to live, that was never heard by the jury. How does the tension where TM was going to live, TM was not called? I mean, there's no allegations that TM was abused, correct? Right. So what's the family tension have to do with TM being called a witness? Because it's not unheard of for children to fabricate allegations of sexual abuse during times of family turmoil, during times when parents are going through divorce or separation. And at the time ZM and AM came forward, there was that family turmoil. I thought you said the tension centered around TM. The what? Where he was going to live. Right. Right. He did not want to live with his mother. Then all of a sudden ZM and AM said, hey, guess what, my father abused us. At the time, TM did not want to live with his mother. And at the same time, ZM was fighting with his father about Frank's alleged inappropriate conduct toward his fiancée. Thank you. You'll have time for a vote. Mr. Rogers. Good afternoon, Your Honors, counsel. May it please the Court. My name is Stephen Rogers, and I represent the people of the state of Illinois. Your Honors, I want to first start, I'll skip ahead to the propriety of TM testimony was litigated pretrial. The state moved in limine to bar TM from testifying, essentially to say saying nothing happened is not relevant. The defense came back on Report of Proceedings, page 707, and stated, and I quote, the implication that it happened with TM is going to be there, and I think I need to be able to rebut that. I subpoenaed TM because I don't think this is fair that they're bringing this up and putting this implication that my client, TM, were doing this, and that there's this implication that he's been molesting TM. And that gets to what evidence was presented at trial, and that is that Detective Damon testified that he viewed TM's interview and nothing happened. No red flags were raised, and no further investigation occurred. And that allowed trial counsel to argue an opening, Report of Proceedings, page 744. You will hear that ZM, quote, had some concerns about his brother, TM, based on nudism only, concerns that were unfounded. And then trial counsel in closing argument, Report of Proceedings, page 959 to 960. TM was interviewed, and you all heard Detective Damon tell the defendant that there were no red flags raised. You heard that the officer did not pursue any charges or anything further with regard to TM, and you've heard that there's no charges about ZM. So that would have brought to the jury's attention, the fact finder's attention, that TM had, by implication, not been molested, correct? Exactly, Your Honor. How does that address counsel's argument about the spammy motive as being another, she's arguing, legitimate issue that they want to make it before the trial, in fact, concluded? Will you make of that argument? Well, Your Honor, in the post-conviction petition, the only allegation about family turmoil that could even remotely relate is that Trent wanted to live with me, being the defendant. And then he made some allegations about the mother, but there's nothing in here about Trent hated being at his mother's house or hated the live-in boyfriend. There was nothing along those lines. The defendant just states he wanted to live with me. So it's sort of vague and ambiguous. Well, it certainly doesn't show the family turmoil defense counsel's discussing, but we also have to put in context, AM and ZM were adults, and there's no indication they were living in that household. So it would be kind of odd for those two being out of the household, and AM specifically testified she hadn't seen the defendant in five years since she moved out in September 2008. She had been in college. She did not make these allegations until June of 2013, and that was only because the police reached out to her because ZM had filed his allegations. So the idea that AM all of a sudden, in a time of family turmoil, brought these allegations is completely refuted by the record. Let's say that if we were to agree that counsel was ineffective, that counsel could have called TM to deny that he ever made the comment about hiking naked and being ordered not to put his clothes back on, if that was ineffective, if there was no reasonable trial strategy. What about the prejudice prompt? Would that have affected the outcome? Is there any reasonable probability that the outcome would have affected by that, given the defendant's own testimony, putting himself with his children at the specified times when they said the abuse occurred naked? Absolutely not, Your Honor. With all the other evidence, even if TM said, I never had that conversation in front of ZM, that would not have resulted in a reasonable probability of a different outcome at trial. As Your Honor has discussed earlier, there were two motives. One was this concern for TM, but the other was defendants looking at his girlfriend's cleavage at, I believe, it was a luncheon before graduation. And even defendant, during the police interview he had, he says, I had to chastise TM to put his clothes back on, and when he would walk in on me changing, I had to yell at him to get out of the room. I mean, it's not unreasonable to assume there were conversations about nudity that occurred between defendant and TM. So to the extent that ZM would have taken out of context or misunderstood comments of TM, I don't think denying the underlying substance of the conversation would have essentially undermined ZM's reason for coming forward. The defendant maintained his nudity. I mean, he was a nudist all the way up to and including the trial, right? Yes, Your Honor. And he admitted to being nude around AM and ZM all the time, and he actually said, you know, I really had to tone it down with TM based on the issues I had with AM, and that essentially by the time she's a teenager, he's teaching her about sex and the nude, or both of them are nude. Once the mother finds out, she kicks him out of the house. So he, to some extent, has to change his behavior, but that's not to say he was not still nude, nude-hyping or anything later on. I do want to – there were a couple of corrections, and defendants reply, page 1 and 2. There was a quote, both AM and ZM were fighting with the defendant when they accused him of sexual abuse. The record citation is to defendant's statement and allocution. And second, as I discussed earlier, AM had testified that she hadn't seen the defendant in nearly five years at the time she made these allegations, so it certainly was not her reporting abuse in the midst of a fight. She had actually testified she had moved on and thought it had stopped with her. And defendants reply, page 2, similarly cites to the statement and allocution and said that AM made her accusations after a confrontation between AM and Defendant Nation, but that confrontation also occurred when AM was 17, and she didn't testify until she was 23. I think if Your Honors don't have any further questions. We would respectfully request that you affirm the trial court's dismissal of the post-conviction. Thank you, Mr. Rogers. Just have a couple of points. Trenton, the allegations contained in the petition regarding the tension about where Trenton was going to live. TM. Excuse me? TM. TM, sorry. That is not contradicted by the record. There's nothing in the record to contradict it. And AM. Hold on. Let me ask this. How does that translate into a reasonable likelihood that the outcome would have been different if they had proved it? Well, first of all, we don't have to prove he didn't have to prove a reasonable likelihood that the outcome of the trial would have been different. He had to prove that it was arguable that counsel's failure to call him was prejudicial. At the first stage of proceedings, he doesn't have to prove strictness. No, prejudicial means that he does have to establish at this stage that there's a reasonable likelihood that the outcome of the trial may have been different. He has to show that it was arguable, that it was right. Right. Which is a lesser standard than Strickland. He doesn't have to meet Strickland's standard. He has to make a lesser showing at the first stage. Right. But he still has to make a showing. He has to make a showing, but it's lesser than what Strickland requires. Because there's an arguable basis that the outcome of the trial would have been different. So what is the arguable basis? Arguable basis is why the evidence would have made a difference. Because it would have called into question A.M. and Z.M.'s motive for coming forward, and it would have raised the possibility that they fabricated their allegations during this time of family turmoil. And as to the turmoil regarding or between A.M. and Frank, that is in the record that they had a strained relationship since at least 2007, when she was a teenager. But that turmoil, she went away. She was gone. The relationship, according to his statement in elocution, was strained from that moment on. He didn't have a good relationship with A.M. He had a strained relationship with her. He was feuding with Z.M., and there was tension regarding T.M.'s living arrangements. The feud with Z.M. was just over peering at his girlfriend. Right. But that is what brought back the flood of memories for Z.M. That plus. It was actually he said it was the incident with his fiancée brought back the flood of memories, not what T.M. said. But he said he came forward ultimately to protect T.M. In light of the importance of T.M.'s testimony to the defense, how it would have called into question his siblings' motives, and it would have explained the circumstances surrounding when they came forward, the testimony was important to the defense. And given the importance of his testimony, it is at least arguable that counsel's failure to call him was professionally unreasonable, and it is at least arguable that that error was prejudicial. The allegation is neither fanciful nor based on some indisputably meritless legal theory. He met the low threshold of showing the gist of a constitutional claim. And for that reason, this Court should reverse the chalkwork summary dismissal of the petition of remand of cause for second stage proceedings with the appointment of counsel. Thank you. Thank you. The Court thanks both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued in due course. Thank you.